UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RODHEIM TAYLOR,

Plaintiff,

v.                                              CAUSE NO. 3:26-CV-421-PPS-JEM

ENGLISH, CENTURION MEDICAL
GROUP LLC, ANGLE, KUENZLI, KIM
MEYERS, LEANNE IVERUS,
FAIRCHILD,

Defendants.

OPINION AND ORDER

Rodheim Taylor, a prisoner without a lawyer, filed a complaint. ECF 2. Under 28

U.S.C. § 1915A, I must screen a prisoner's complaint and dismiss it if the action is

frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks

monetary relief against a defendant who is immune from such relief. To proceed

beyond the pleading stage, a complaint must contain sufficient factual matter to "state a

claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Taylor is

proceeding without counsel, his allegations must be given liberal construction. *Erickson

v. Pardus*, 551 U.S. 89, 94 (2007).

Taylor, who is currently incarcerated at the Miami Correctional Facility (MCF), alleges he was placed in administrative segregation for protective custody purposes on October 4, 2025. He claims he was previously diagnosed with a serious mental illness (SMI), but he doesn't provide a specific diagnosis or details about his symptoms/needs. He states that the "Centurion Medical Staff" are not providing him with "adequate treatment for my mental health" and that "administrative staff" at MCF are not following Indiana Department of Correction (IDOC) policies because he has been held in administrative segregation for more than thirty consecutive days despite his SMI. ECF 2 at 3. But he is seen weekly by Mrs. Fairchild, whom he describes as the "mental health lady." *Id*. at 9.

Taylor has written "several grievances, request for Interviews, and Medical request forms, as well as been informing Medical Professionals and Mental health staff" about the policy violation. *Id*. at 11. Specifically, he states, "Warden Mr. English, The Unit team manager of Administrative Segregation Mr. Angle and the Mental health psychologist have Clear knowledge that the Plaintiff is diagnosed with a (serious Mental Illness) and continues to keep him in Administrative segregation" despite his request for a transfer to a new facility. *Id*. Here is how he describes the happenings inside the administrative segregation unit:

> Inmates in administrative segregation sporadically kick on there (sic) assigned cell doors because Correctional Officers who work on unit fail to answer the button in the inmates cell. Inmates set fires frequently which causes extreme chaos from other inmates yelling. This causes the Plaintiff to have heighten Anexity (sic) and spurts of chronic depression because he feels hopeless and helpless at the fact he has been in here over the extended Period of time Policies states.

2

*Id*. at 12.

Taylor has sued Centurion Medical Group, LLC, Unit Team Manager Mr. Angle, Medical Director Mr. Kuenzli, Assistant Medical Director Kim Meyers, Health Services Administrator Leanne Iverus, Mental Health Professional Mrs. Fairchild, and Warden English for monetary damages. He also seeks "to be transferred to a facility that will Provide better treatment for my (Serious Mental Illness) classification." *Id*. at 16.

The focus of Taylor's complaint is that he has been held in administrative segregation for more than thirty consecutive days, which allegedly violates IDOC policy. As an initial matter, I note that, while it may be helpful evidence, a violation of IDOC policy alone isn't a constitutional claim. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"); *Conner v. Hoem*, 768 F. App'x 560, 564 (7th Cir. 2019) ("In any case, the Constitution does not require state actors to enforce their own policies and regulations.") (citing *Garcia v. Kankakee Cnty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002)).

I will construe his allegations about his classification under the Fourteenth Amendment which provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. Due process is only required when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In other words,

"disciplinary segregation *can* trigger due process protections depending on the duration and conditions of segregation." *Jackson v. Anastasio*, 150 F.4th 851, 858 (7th Cir. 2025) (quoting *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (emphasis in original)). Both the duration and the severity of the conditions themselves must be considered when determining whether the prisoner's placement in solitary confinement triggers due process protections—the length of time must be "substantial" and the conditions must be "unusually harsh." *Id.*

Similarly, while inmates don't generally have a liberty interest in "avoiding transfer to *discretionary* segregation—that is, segregation imposed for administrative, protective, or investigative purposes[,]" *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (emphasis added) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005)), the same analysis applies with regard to duration and the harshness of the conditions. *See e.g., Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain in the general population, . . . but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated.") (internal quotation marks, parenthesis, and citations omitted; emphasis in original); *Marion*, 559 F.3d at 697-98 & nn.2–3 (collecting cases that held segregation of two to ninety days does not trigger due process concerns and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh.") (emphasis added); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also*

4

*Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists).

But once an inmate shows a particular placement implicates a liberty interest, he has a right to a meaningful review, which periodically "evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines whether that placement remains warranted.'" *Isby*, 856 F.3d at 527 (quoting *Toevs v. Reid,* 685 F.3d 903, 913-14 (10th Cir. 2012)).

Taylor has been held in administrative segregation for approximately six months, which may trigger due process concerns *if* the conditions are sufficiently harsh. *See Marion*, 559 F.3d at 697; *see also Jackson*, 150 F.4th at 859–60 (discussing duration and collecting cases suggesting that "solitary confinement of up to one year, standing alone, is not sufficient to implicate a liberty interest"). The problem with Taylor's complaint is that it doesn't sufficiently allege such conditions. The only description he provides is that inmates "sporadically" kick on their cell doors because officers don't answer call buttons and that they set fires "frequently" which causes yelling and chaos. Taylor claims these actions by the other inmates trigger his anxiety and create "spurts" of depression, but he doesn't provide details about the fires or suggest they have caused any physical damage. Thus, these vague allegations fall short of suggesting the conditions were/are atypically harsh. *See, e.g., Jackson*, 150 F.4th at 860 (distinguishing between "disgusting" conditions and those that were simply restrictive and unpleasant). Therefore, I find that Taylor hasn't stated any plausible Fourteenth Amendment due process claims.

I must also consider whether the conditions of Taylor's confinement violate the Eighth Amendment.[1] The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend*, 522 F.3d at 773 (citations omitted). An officer can violate the Constitution if he or she exhibits deliberate indifference to hazardous conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Thomas*, 2 F.4th at 719–20 (internal quotation marks, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted).

"Generally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless 'they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue

---

[1] *See Townsend*, 522 F.3d at 772-73 ("The issue of cell conditions in TLU is best analyzed as a claim brought under the Eighth Amendment.").

blankets.'" *Johnson v. Prentice,* 29 F.4th 895, 904 (7th Cir. 2022) (quoting *Wilson v. Seiter,* 501 U.S. 294, 304 (1991)). Allegations of vague "overall conditions" aren't sufficient. *Id.* Regarding state of mind, "[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.,* 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.,* 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys,* 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton,* 44 F.4th at 615.

Again, Taylor's vague allegations about inmates kicking on their cell doors and setting fires aren't sufficient to show the conditions subjected Taylor to an excessive risk to his health or safety. For example, he doesn't explain when the fires occurred, where they were located in relation to his cell, or whether he was affected by smoke or other physical dangers. Nor does he allege that he, personally, had to kick on his cell door because of a lack of attention from staff about any specific issue. *See generally Thomas,* 2 F.4th at 719–22 (describing the types of conditions that rise to the level of a violation); *Isby,* 856 F.3d at 522–23 (same); *see also Swanson v. Citibank, N.A.,* 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original); *Bissessur v. Indiana Univ. Bd. of Trs.,* 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face). Moreover,

Taylor doesn't plausibly allege that any of the named defendants participated in or were aware of, yet turned a blind eye to, those specific issues. Rather, his allegations are generalized and focus almost solely on the fact that he was held in segregation longer than IDOC policy allows. Overseeing prison operations and being copied on grievances isn't sufficient to state a claim. *See Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") (citation omitted)); *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) ("[T]he division of labor is critical to the efficient functioning of the [prison] organization."); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (There is no general respondeat superior liability under 42 U.S.C. § 1983.); *see also Adams v. Reagle*, 91 F.4th 880, 894–95 (7th Cir. 2024) (finding that the officers responsible for the decision to place plaintiff in department-wide restrictive housing didn't violate the Eighth Amendment because they didn't create the conditions, make them worse, or have responsibility or the authority to change them).

I must, however, also assess Taylor's allegations in light of his mental health issues. Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas*, 2 F.4th at 722. To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice,

or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care.").

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires a something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Ignoring an inmate's complaints

of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotation marks omitted).

With regard to non-medical prison officials, they generally don't violate the Constitution it they "reasonably relied on the judgment of medical personnel." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (quoting *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018)). While prison officials are "presumptively entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care[,]" they may not ignore a prisoner's complaints entirely or refuse to act if they know the medical staff is failing to treat the prisoner. *Id.* (internal quotation marks and citations omitted). That said, "[a]n official's 'mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient.'" *Id.* (quoting *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)).

Here, Taylor repeatedly insists he isn't being provided with adequate mental health treatment. However, he provides very few factual assertions to support that position. He claims he was diagnosed with a SMI, but he doesn't provide any details about that diagnosis. As for how the conditions have affected him, he states only that he has heightened anxiety and "spurts" of depression. Without additional information, I can't determine whether his medical issue as it relates to the conditions of his confinement was/is objectively serious. Moreover, Taylor hasn't identified a defendant who acted with deliberate indifference to his needs. Regarding the medical

professionals, he admits he is seen weekly by a "mental health lady" named Mrs. Fairchild, so it's clear he is receiving at least some care for his SMI.[2] He doesn't provide any other details about the treatment he actually did receive, why it was allegedly deficient, or whether he is being medicated. He further claims that Medical Director Keunzli and Assistant Medical Meyers, and HSA Iverus have been negligent because they know he has a SMI, is being held in administrative segregation, and hasn't been provided with adequate treatment. Absent more details, however, this amounts to little more than a legal conclusion. *See Swanson*, 614 F.3d at 403; *Bissessur*, 581 F.3d at 602.[3]

As to the non-medical professionals, Taylor's claims are similarly vague. He believes UTM Angle and Warden English have violated his constitutional rights because he is being held in administrative segregation "without a transfer" for longer than IDOC policy allows despite his SMI. He says he has filed grievances about the matter stating the same thing and noting that he isn't being provided with adequate mental health treatment, but, again, those complaints are described only in the most general terms. Without more, it's not reasonable to infer either of these defendants have been deliberately indifferent to his needs, especially considering Taylor admits he is being seen weekly by a mental health professional. *See, e.g., Eagan*, 987 F.3d at 694

---

[2] *See also* ECF 9 (grievance dated March 13, 2026, stating, "I talk to mental health every week because of my SMI status.").

[3] Taylor has also sued Centurion Medical Group, LLC, but there is no *respondeat superior* liability under 42 U.S.C. § 1983—a private company can't be held liable for damages simply because it employed a medical professional who engaged in wrongdoing. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020). Nor has Taylor stated a plausible claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

11

(prison officials may defer to the judgment of the facility's medical professionals). Conclusory allegations that he has been denied adequate mental health treatment aren't sufficient.

In sum, the complaint is short on facts, dates, and specifics about his precise issues and the mental health treatment he has received. Based on what it does say, it's not plausible to infer that he is not receiving constitutionally adequate medical care. *See Swanson*, 614 F.3d at 403 ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original)); *see also Sanders v. Moss,* 153 F.4th 557, 560–71 (7th Cir. 2025) (noting that case of inmate with SMI who was forced to spend eight years in segregation was a "tragic one" but finding no Eighth Amendment violation); *Johnson v. Prentice*, 29 F.4th 895, 901–05 (7th Cir. 2022) (prisoner who suffered from SMI was held in segregation for approximately three years but no Eighth Amendment violation because conditions weren't sufficiently serious and his SMI was "regularly monitored" by mental health professionals). As it stands, Taylor has failed to state any plausible Eighth Amendment claims.

The current complaint does not state a claim for which relief can be granted. If Taylor believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number

12

on a **<u>Pro Se 14 (INND Rev. 2/20) Prisoner Complaint</u>** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

As a final matter, Taylor has filed a separate motion for preliminary injunctive relief. ECF 4. A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, I need not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more complete discovery and

litigation." *Id.* at 792.[4] With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, I may then "consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully*, 977 F.3d at 613 (quotation marks omitted).

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate to another prison—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, my ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

Here, Taylor asks to be transferred to a different facility and placed into the general population there. However, he has no chance of success on the merits of such an

---

[4] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

injunctive relief claim because—as described in detail above—his complaint fails to state any plausible claims.[5]

Accordingly:

(1) The motion for preliminary injunctive relief (ECF 4) is DENIED;

(2) Rodheim Taylor is GRANTED until **May 12, 2026**, to file an amended complaint; and

(3) Rodheim Taylor is CAUTIONED that if he doesn't do so by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state any claims for which relief can be granted.

**IT IS SO ORDERED.**

ENTERED: April 7, 2026.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

---

[5] I also note that in a grievance dated March 13, 2026, which he has attached to his motion, Taylor acknowledges that he "talk[s] to mental health every week because of my SMI status." ECF 4-1. Thus, he is currently receiving at least some care.